UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KELLY FRENCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:10-cv-01699-LJM-DKL |
| ELI LILLY & COMPANY, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Eli Lilly & Company ("Lilly") has moved for summary judgment on the racial discrimination claims brought against it by Plaintiff Kelly French ("French"). Dkt. No. 64. In her response, French abandoned all of her claims except two: (1) an allegedly discriminatory decision by Lilly in August 2004 to assign French to a lower pay grade level than non-African American co-workers who performed the same job; and (2) an allegedly discriminatory decision by Lilly in 2005 to deny French a merit pay increase based on her performance. Dkt. No. 72, at 1 & n.1. To the extent French brought claims other than the two listed here, Lilly's Motion for Summary Judgment is **GRANTED**. With respect to French's two remaining claims of racial discrimination, the Court has considered the Parties' arguments and for the reasons stated herein **GRANTS** the Motion.

I.  **BACKGROUND**

The undisputed facts and the facts in the light most favorable to French are:

A.  **French's Early Employment History at Lilly**

French began employment at Lilly in 2000 as a Regulatory Product Safety

Associate at a pay grade level 50.  Dkt. No. 64-1, French Dep. at 32-33, 48 & Ex. 2 thereto.  French received merit-based salary increases in that role.  *Id.* French Dep. at 48-49, 72-73, 75-76 & Exs. 6 & 7 thereto.  French stayed in that role until 2002 when she was granted a leave of absence to move to Tennessee with her husband because of a work-related relocation.  *Id.* French Dep. at 42-43.  Shortly after her relocation to Tennessee, French applied for and was hired to be a Sales Representative for Lilly, also at a pay grade level 50.  *Id.* French Dep. at 43, 177.  French's continued employment at pay grade level 50 was consistent with Lilly's policy to maintain pay grade levels for transferring employees when the pay grade level band for the new position encompasses the pay grade level of the employee's former position.  Dkt. No. 64-3, Hervey Dep. at 17.

In 2004, French moved back to Indianapolis, again because of her husband's job transfer, and Lilly granted her a relocation leave of up to twelve months.  Dkt. No. 64-1, French Dep. at 54-55 & Exs. 4 & 5 thereto.  In July 2004, Lilly posted a "Sr. Regulatory Associate" position with a pay grade level range of 50-54.  Dkt. No. 64-4, Sharp Dep. at 56-57 & Ex. 4 thereto.  French applied for and was hired into the position and remained at pay grade level 50 upon the transfer.  Dkt. No. 64-1, French Dep. at 58, 61; Dkt. No. 64-3, Harvey Dep. at 17.

When she started in her role as a Regulatory Associate, French was assigned to both the Insulin Brand Team and the Byetta Brand Team.  Dkt. No. 72-2, Sharp Dep. at 48, 77-78 & Ex. 7 thereto; Dkt. No. 72-4, French Dep. at 82-38 & Ex. 9 thereto.  The Insulin Brand Team was one of the Regulatory group's most high-volume assignments, while the Byetta Brand Team was one of the most complex assignments because it

required a new product launch and coordination with another pharmaceutical company. Dkt. No. 72-2, Sharp Dep. at 69-70. Stacy Holdswoth ("Holdsworth") supervised French during her first year as a Regulatory Associate. Dkt. No. 64-1, French Dep. at 61. French testified at her deposition that Holdsworth treated her fairly and did not discriminate against her and that French had no complaints about her work environment. *Id.* 62-64. Michele Sharp became French's supervisor in May 2005. Dkt. No. 64-4, Sharp Dep. at 25.

In 2005, Lilly posted another Regulatory Associate position to support Cymbalta within Sharp's group. *Id.* Sharp Dep. at 89-90; Dkt. No. 64-6, Sharp Decl. ¶¶ 7-8. There is a dispute about the whether the pay grade level for the position was 50-54 or 56-58. *Compare* Dkt. No. 64-6, Sharp Decl. ¶¶ 7-8 *with* Dkt. No. 72-4, French Dep. at 150-52 (recalling the posting for pay grade level 54), *and with* Dkt. No. 72-5, Bryant-Willis Dep. at 141-42 (stating that her investigation revealed the position posting for a pay grade level 56-58). It is undisputed that this position had the same job description and objectives as French's position. Dkt. No. 72-5, Bryant-Willis Dep. Ex. 17, at LLY-French000894-95. French inquired about the position as a means for promotion; however, she was told that she could not use the posting in an effort to short-circuit the pay grade promotion process and, had she obtained the position, she would have transferred into it, she would have done so at her pay grade level 50. Dkt. No. 64-6, Sharp Decl. ¶¶ 7-8; Dkt. No. 64-3, Hervey Dep. at 17. Lilly's policy is that employees maintain their pay grade level when they transfer when the pay grade level band for the new position encompasses the pay grade level from the employee's former position. Dkt. No. 64-3, Hervey Dep. at 17. Sharp hired Paul Orth ("Orth") to fill the position, who

was an internal candidate and transferred into the position at a pay grade level 54, which was the same pay grade level Orth had in his former position. Dkt. No. 64-4, Sharp Dep. at 89-90; Dkt. No. 64-6, Sharp Decl. ¶¶ 7-8; Dkt. No. 64-3, Hervey Dep. at 17.

**B.     During The Relevant Period, Sharp Holds All Regulatory Associates, Regardless Of Pay Grade Level, To The Same Performance Standards**

According to Lilly's human resources department, although regulatory associates of different pay grade levels had the same performance objectives, supervisors were charged with evaluating performance based on progressively higher "level[s] of contribution and expectations." Dkt. No. 72-5, Bryan-Willis Dep. Ex. 17, at LLY-French000894-95. As Sharp apparently explained to Lilly's human resources, Regulatory Associates, pay grade levels 50-52, and Sr. Regulatory Associates, pay grade level 54, "do the same or similar activities . . . but it differs in the area of the 'How.' [Pay grade level 54s] . . . work more independently, more proactive, more leadership skills, deal with more complex situations, they are more effective communicators . . . and they independently interact with FDA without manager involvement." *Id.* Bryant-Willis Dep. Ex. 14, at LLY-French000869.

French was the only pay grade level 50 regulatory associate in the group, but was "rated compared to her peers," who were all at higher pay grade levels. *Id.* at LLY-French000871. Sharp admitted to Lilly's human resources that French was "being compared to (4) 54 [pay grade level] associates . . . . She's being asked to be successful against her peers and what they are required to do based on the system." *Id.* Sharp also admitted to Lilly's human resources that French was doing "higher level work than [pay grade level] 50." *Id.* at LLY-French000874.

4

The upper-level manager in French's department, Holdsworth, also stated that French was being "benchmarked against her peers," who were at pay grade level 54. *Id.* Bryant-Willis Dep. Ex. 15, at LLY-French000881.  Holdsworth admitted that French's 2006 "Talent Assessment is 100% comparing her to her peers at [pay grade level] 54-56." *Id.* at LLY-French000882.

In August 2006, Lilly's human resources department reminded Sharp that she had to "seek out what [pay grade level] 50 work looks like" because she had "a [pay grade level] 50 employee." *Id.* at 178 & Ex. 26 thereto.  Further, Sharp was told to rate French's performance based on pay grade level 50 expectations and that Sharp could not "hold [French] accountable to [pay grade level] standards higher than 50 or 52." *Id.* Sharp was reminded that Lilly "could not get to the end of the year and rate [French] on any other than the expectations of a [pay grade level] 50." *Id.*  In making these comments, Lilly's human resources personnel wanted to make sure that Sharp understood that "people are assessed at the pay grade level and the content of work, the expectations of that pay grade level." *Id.* Bryant-Willis Dep. at 179.

However, as late as October 2006, Lilly noted that Sharp was still struggling to "determine the expectations of a [pay grade level] 50-52." *Id.* at 196-97 & Ex. 33 thereto, at LLY-French001013.  Sharp was told to "re-level the jobs" and reminded to hold French accountable only against the expectations of a pay grade level 50 regulatory associate. *Id.* at 197-99 & Ex. 33 thereto, at LLY-French001013-14.

In November 2006, Lilly's human resources representative prepared a "Proposed HR support plan" with the objective of ensuring that Sharp was "able to clearly articulate the differences in expectations and work by [pay grade level] in her area and to use

5

visible behaviors when assessing performance." Dkt. No. 72-6, Schmid Decl. ¶ 3 & Dkt. No. 72-7, Schmid Decl. Ex. E-14, at LLY-French001139.

C. **Lilly Denies French A 2005 Merit Pay Increase, But Awards Merit Increases To Other Regulatory Associates In Sharp's Group**

In documents provided to Sharp in preparation for French's 2005 performance review, French received consistently positive feedback about her performance from internal customers, colleagues and functional peers. Dkt. No. 72-2, Sharp Dep. at 101-03, 105, 107-09, 105, 153-44 & Exs. 12, 14 & 16-19. In her 2005 performance review, Sharp gave French ratings of "successful" in five categories and "needs improvement" in two. Dkt. No. 72-2, Sharp Dep. at 77-78 & Ex. 7 thereto, at LILLY-WELCH00042797-98. In addition, Sharp noted three areas in which French needed further development: (1) consistent and thorough evaluation of every marketing material, including improvement of her research and evaluation technique with regard to key regulatory issues; (2) working independently; and (3) getting to the essence of regulatory issues and succinctly communicating her thought process and recommendations. Dkt. No. 72-2, Sharp Dep. Ex. 7 at LILLY-WELCH00042797. These criticisms were contradicted by some individuals who provided positive feedback to Sharp about French's performances. *Compare id. with* Sharp Dep. Ex. 12; *compare* Dkt. No. 72-2, Sharp Dep. Ex. 7 at LILLY-WELCH00042797 *with* Sharp Dep. Ex. 17. In addition, Sharp complimented French as being "a dedicated, committed, hardworking team player," which was consistent with other internal feedback from French's internal customers. Dkt. No. 72-2, Sharp Dep. at 99 & Ex. 7 thereto, at LILLY-WELCH00042797; Ex. 12 thereto, at LLY-French000358 (describing French as an "excellent partner to the Humalog Brand Team"); Ex. 16 thereto, at LLY-French000360 (describing French's

6

willingness to meet "with Brand Team members 'one off' to work on projects" and noting her "excellent turnaround time").

Sharp deemed French's overall performance level for 2005 "successful" and "eligible" for a merit increase. Dkt. No. 72-2, Sharp Dep. at 96 & Ex. 7 thereto, at LILLY-WELCH00042797. However, Sharp, in consultation with her supervisors, recommended that Lilly not give French a merit increase and Lilly denied French the merit increase. Dkt. No. 72-2, Sharp Dep. at 93-95, 97-98; Dkt. No. 72-6, at LLY-French000102-104 (11th row).

French asserts that at least four non-African American colleagues who were similarly situated were treated more favorably because they received merit pay increases in 2005:

**1. Sam Chan -** Sam Chan ("Chan"), an Asian-American, who was a pay grade level 54, Senior Regulatory Associate at the time, received a merit pay increase based on his 2005 performance. Dkt. No. 72-6, Schmid Decl. ¶ 3 & Ex. E-12 thereto, at LLY-French000130-32 (14th Row); Dkt. No. 72-3, Weinberg Dep. at 95. In his 2005 performance review, Sharp gave Chan ratings of "successful" in six performance categories and "needs improvement" in one. Dkt. No. 72-2, Sharp Dep. at 102 & Ex. 13 thereto, at LLY-French00496-97. Sharp criticized Chan for failing to adequately prioritize his workload and meet his Brand Team expectations for project completion timelines. Dkt. No. 72-2, Sharp Dep. Ex. 13, at LLY-French000496.

**2. Sophia Kahn –** Sophie Khan ("Khan"), of Middle Eastern decent, who was a pay grade level 54, Senior Regulatory Associate at the time, received a merit pay increase based on her 2005 performance. Dkt. No. 72-6, Schmid Decl. ¶ 3, Ex. E-13, at

7

LLY-French000794-96 (9th Row); Dkt. No. 72-3, Weinberg Dep. at 94-95.  In her 2005 performance review, Sharp gave Khan ratings of "successful" in all seven performance categories.  Dkt. No. 72-2, Sharp Dep. at 211 & Ex. 39 thereto, at LLY-French0001054.

**3. Christine Briere –** Christine Briere ("Briere"), a Caucasian, transferred into her regulatory associate position at a pay grade level 50, which was the pay grade level she had in her prior position with Lilly.  Dkt. No. 72-6, Schmid Decl. ¶ 3 & Ex. E-4 thereto, Briere Employment History.  Briere was promoted to a pay grade level 52 a couple of months after her transfer.  *Id.*

Briere, who was a pay grade level 54, Senior Regulatory Associate in 2005, received a merit pay increased based on her 2005 performance.  Dkt. No. 72-6, Schmid Decl. ¶ 3, Ex. E-4, at LLY-French000119-21 (14th row); Dkt. No. 72-3, Weinberg Dep. at 94-95.  In her 2005 performance review, Sharp gave Briere ratings of "outstanding" in four categories and "successful" in three.  Dkt. No. 72-2, Sharp Dep. at 98 & Ex. 11 thereto, at LLY-French000750.  Briere was described as "a 'greater [sic] partner'" by her Brand Team.  *Id.* Ex. 11, at LLY-French000750.

**4. Patrick Brady –** Patrick Brady ("Brady"), a Caucasian, worked in a level 50 role as a visiting scientist while he was working on a doctorate degree.  Dkt. No. 78-1, Bryant-Willis Dep. at 187.  After completed his doctorate, Bradey applied for an open job as a Regulatory Associate and was hired based on his education and other qualifications into pay grade level 54.  *Id.* at 151 & 187.

Brady, who was a pay grade level 54, Senior Regulatory Associate at the time, received a merit pay increase based on his 2005 performance.  Dkt. No. 72-6, Schmid Decl. ¶ 3, Ex. E-5, at LLY-French000772-74 (6th row); Dkt. No. 72-3, Weinberg Dep. at

95.  In his 2005 performance review, Sharp gave Brady ratings of "outstanding" in four categories and "successful" in three.  Dkt. No. 72-2, Sharp Dep. at 208-09 & Ex. 38 thereto, at LLY-French001032.

**D.     Sharp's 2006 "Talent Assessment" Of French**

In May 2006, Sharp conducted a "Talent Assessment" of French.  Dkt. No. 72-2, Sharp Dep. at 113.  The Talent Assessment consisted of obtaining structured feedback from individuals with whom French had interacted as a regulatory associate over the previous nineteen months.  *Id.* at 113-14; 126-27 & Ex. 20 thereto, at LLY-French000345.  Although most of the feedback Sharp considered was provided by individuals whose names French had submitted, Sharp extended invitations to a few more individuals on her own initiative.  *Id.* at 146.  Most of the participants provided comments during a live Talent Assessment session held on May 9, 2006, but some prepared comments using a standard human resources Talent Assessment too or via email in lieu of attending the meeting.  *Id.*

After conducting the live session, Sharp prepared a summary of the feedback.  *Id.* at 176 & Ex. 24 thereto.  Ponce Tidwell ("Tidwell"), who participated in the Talent Assessment, reported to Lilly that Sharp's summary did not fairly represent what was said in the meeting.  Dkt. No. 72-5, Bryant-Willis Dep. at 168-69 & Ex. 22 thereto.  Upon being confronted by Lilly about the Talent Assessment, Sharp admitted that her summary did not "thoroughly capture" "more positive" comments of at least one person, Paul Gessellechen ("Gessellechen").  *Id.* at 161-62 & Ex. 21 thereto, at LLY-French000920.  Sharp decided to exclude positive comments from Gessellechen, who she had specifically invited to participate in the assessment because of his "routine

9

interaction" with French, because he had observed French in 2004 and 2005, not in 2006. Dkt. No. 72-2, Sharp Dep. at 146-48; Dkt. No. 72-5, Bryant-Willis Dep. Ex. 21, at LLY-French000920.

### E. Sharp Divests French Of Responsibility For The Byetta Brand Team & Lilly Begins To Coach French Out The Regulatory Group

In mid-2006, Lilly transferred regulatory duties for the Byetta Brand to Beth Weinberg ("Weinberg"), who was a "Principal Regulatory Scientist" at pay grade level 60. Dkt. No. 72-3, Weinberg Dep. at 13 & 23. Sharp testified that she made this decision because Byetta was a particularly complex project and French had a lot on her plate with both Byetta and insulins. Dkt. No. 72-2, Sharp Dep. at 67-68.

In addition, as early as June and July 2006, Holdsworth, Sharp's supervisor, and Vice President Jennifer Stotka told Sharp to "coach [French] out of US Regulatory." Dkt. No. 72-5, Bryant-Willis Dep. Ex. 14, at LLY-French000871 & 74. In July 2006, Holdsworth confirmed to Lilly's human resources representative that "the best thing for [French was] to seek positions outside this area." Dkt. No. 72-5, Bryant-Willis Dep. Ex. 15, at LLY-French000883. Sharp knew that French was "very steadfast on making it work in her current role," *id.* at LLY-French000871, but Sharp continued to encourage French to find a position outside of Regulatory Affairs even though Sharp recognized that "if [French] posts out, she's already been a 50 for 6 years and if she posts out at a 50, she'll probably be at a 50 for another 3 years." Dkt. No. 72-5, Bryant-Willis Dep. Ex. 14, at LLY-French000876.

On July 19, 2006, the management team for Lilly's Regulatory Affairs group met with a human resources representative and concluded that "the best thing for [French] would be to post out" of the group. *Id.* Bryant-Willis Dep. at 135-36 & Ex. 16 thereto, at

LLY-French000889.

**F.     French's 2006 Performance Is Rated Successful And She Is Promoted To Pay Grade Level 52 Effective March 2007**

In French's 2006 performance review, Sharp rated French "successful" in six areas and "needs improvement" in one area. Dkt. No. 72-2, Sharp Dep. at 201-03 & Ex. 1 thereto, at LLY-French000284-85. In March 2007, French was promoted to pay grade level 52. *Id.* at 203. Sharp testified that she was able to give French those rating and not challenge the promotion because between July 2006 and the end of 2006, Sharp had more opportunity to observe French's performance, had more one-on-one discussions with French and had collected more feedback from internal customers. *Id.* at 203-05.

**G.     In 2008, French Resigns After What She Perceives Is Another Inconsistent Performance Evaluation**

French's 2007 performance evaluation indicated that she needed improvement in "create internal focus" and "achieve results with partnership areas." Dkt. No. 72-4, French Dep. at 126 & Ex. 18 thereto, at LLY-French000297. Furthermore, the 2007 performance evaluation criticized French's ability to "communicate her recommendations to the team with rationale and in a solution-oriented way that does not convey a negative tone." *Id.* However, several of French's internal customers praised French for her ability to communicate, explain her recommendations, provide alternatives and problem-solve. Dkt. No. 72-3, Weinberg Dep. at 75-86 & Exs. 7-15 thereto.

French refused to sign her 2007 performance evaluation because she was concerned that the inaccuracies were the result of race discrimination. Dkt. No. 72-4,

French Dep. at 126, 129 & Ex. 19 thereto. French resigned in February 2008 citing as her reasons the ongoing racial discrimination at Lilly in, among other things, pay and promotions. *Id.* at 134-35 & Ex. 20 thereto.

However, with respect to her pay, at her deposition, French testified:

Q. Do you believe that your pay was set in any way because of your race?

A. I don't know.

* * *

Q. Do you think your race was a factor in the decision not to give you a merit increase?

A. I don't know what the factor was. I just know the facts, that I didn't receive one.

Dkt. No. 64-1, French Dep. at 146, 155. When asked about whether she believed any of her supervisors had discriminated against her because of her race, French either testified that they had not or testified that she did not know the manager's motive, she just felt she was treated unfairly with respect to performance evaluations and pay. *Id.* at 40-41, 52-54, 63-67, 69-71. In a more general sense of discriminatory behavior, French testified that she had never been the target of conduct or language that was racially offensive or inappropriate and had never overheard any racist comments, jokes or innuendo. *Id.* at 71.

**II.     STANDARDS**

**A.     Summary Judgment**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual

disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim.  *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994).  "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

**B.**   **Disparate Treatment Under 42 U.S.C. § 1981**

French alleges that Lilly intentionally discriminated against her because of her race in violation of 42 U.S.C. § 1981.  Section 1981 prohibits discrimination with regard to making and enforcing employment contracts.  *See Walker v. Abbott Labs.*, 340 F.3d 471, 472 (7th Cir. 2003).  The same standard applies to French's § 1981 as if French had brought her claims under Title VII of the Civil Rights Act of 1964, as amended.  *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).

French acknowledges that she has no direct evidence of disparate treatment, Dkt. No. 72, at 22; therefore, French must proceed under the indirect proof method explained in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 849 (7th Cir. 2008).  Under the indirect method of proof, French can establish a *prima facie* case of discrimination by

showing that: (1) she is a member of a protected group; (2) she was fulfilling her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who are outside of her protected group. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 274 (7th Cir. 2004). "To be 'similarly situated,' [French] must show that her performance, qualifications, and conduct were comparable to the nonprotected class member in 'all material respects.'" *Id.* (quoting *Durkin v. City of Chi.*, 341 F.3d 606, 613 (7th Cir. 2003). If French establishes a *prima facie* case of discrimination, the burden of production shifts to Lilly to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010). If Lilly can do so, the burden shifts back to French to show that Lilly's proffered reason is pretextual. *See id.*

### III. DISCUSSION

French claims that Lilly intentionally discriminated against her by assigning her to a lower pay grade level than her peers in the regulatory group upon her transfer into the group in 2004 and denied her the opportunity to post for a promotion. She claims that all the other employees were similarly situated because they were measured by the same standards and there is no legitimate, non-discriminatory reason that French was kept at pay grade level 50 when her performance was measured by the same standards, but her peers were paid at higher levels.

Lilly asserts that, like her peers and pursuant to Lilly's policy, French transferred into the Regulatory Associate position at the same pay grade level as she had before

the transfer. Moreover, Lilly contends that French has not established that similarly situated employees were treated more favorably and that race was the reason.

French has failed to establish that her transfer to the Regulatory Associate position at pay grade level 50 was discriminatory because no similarly-situated peers were treated differently and there is no evidence that Lilly's policy is motivated by race. French has presented no evidence that Lilly's policy with respect to maintenance of the pay grade level assignment of transferring employees as it was applied to her was racially motivated. French acknowledged as much by failing to challenge the policy with respect to her transfer into the Sales Representative position.

Further, French claims that Breire and Brady were promoted shortly after they became Regulatory Associates. But, Briere transferred into her role in the regulatory group at the same pay grade level of her previous job, the same way that French transferred. Dkt. No. 72-6, Schmid Decl. ¶ 3 & Ex. E-4 thereto, Briere Employment History. Briere's promotion based on performance while in the regulatory group cannot support French's claim that Lilly discriminated against her by assigning French a pay grade level 50 when she transferred into the group.

With respect to Brady, Lilly provided un-rebutted evidence that he was a visiting scientist and received his doctorate before he was hired as a Regulatory Associate. Dkt. No. 78-1, Bryant-Willis Dep. at 151 & 187. As such, even if French's background and experiences were similar, which they were not, Lilly had legitimate, non-discriminatory reasons for hiring Brady at a pay grade level 54.

The other Caucasian in the group, Orth, transferred into the department at a pay grade level 54, the same pay grade level he had in his prior position at Lilly, which was

16

also consistent with Lilly's policy. Dkt. No. 64-3, Sharp Dep. at 89-90; Dkt. No. 64-5, Sharp Decl. ¶¶ 7-9; Dkt. No. 64-3, Hervey Dep. at 17.

French has also failed to show that Lilly's policy to not allow an employee to post for her same position to get a pay raise is based on discriminatory animus.

French also claims that Lilly discriminated against her by not giving her a pay raise after her 2005 performance review when other, similarly-situated regulatory associates received raises. The Court concludes that French has failed in her burden to show that she was similarly situated to the other regulatory associates since none of those employees had the same performance evaluation even at the most macro level. The most similar employee had one less "needs improvement" area than French, *compare* Dkt. No. 72-2, Sharp Dep. Ex. 7, at LILLY-WELCH00042797-98 *with id.* Sharp Dep. Ex. 13, at LLY-French00496-97, which does not support of finding that they were similarly situated. *See*, *e.g.*, *Silverman v. Bd. of Educ. of the City of Chi.*, 637 F.3d 729, 742-43 (7th Cir. 2011) (concluding that a teacher was not similarly situated because of differences in performance reviews); *Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) (explaining that differences in performance evaluations can be a legitimate reasons for differences in treatment). Furthermore, French's perception that Sharp was unfair in her assessments of French's performance is insufficient evidence of pretext. Sharp may have been more harsh with her criticism than French liked, emphasized different input than French would have chosen or not communicated her concerns to French well, however, the Court cannot reassess French's performance when Sharp honestly believed that French was not performing to Lilly's standards. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (confirming that a court

17

is not a "'super personnel review board'"). Moreover, the evidence reveals that Sharp's supervisors agreed with her assessments of French's performance and had legitimate and real concerns that Lilly needed to revise the hiring criteria for the Regulatory Associate position in its entirety. See Dkt. No. 72-5, Bryant-Willis Dep. at 135-36 & Ex. 16 thereto. There is no evidence that Sharp or her managers were lying when they expressed concern that the regulatory role was not a good fit for French's skills.

French has not met her burden to show that similarly situated employees were treated differently or that Lilly's proffered legitimate, non-discriminatory reasons for making its decisions were pretext on her claims that Lilly discriminated against her based in August 2004 or in 2005/2006.

### III. CONCLUSION

For the reasons stated herein, the Court **GRANTS** summary judgment in favor of Defendant Eli Lilly & Company and against Plaintiff Kelly French on all of Plaintiff's claims.

IT IS SO ORDERED THIS 23rd day of January, 2013.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Benjamin C. Ellis
BETZ & BLEVINS
bellis@betzadvocates.com

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Jamenda A. McCoy
FAEGRE BAKER DANIELS LLP - Chicago
jamenda.mccoy@gmail.com

Craig M. Borowski
FAEGRE BAKER DANIELS LLP - Indianapolis
craig.borowski@faegrebd.com

Ellen E. Boshkoff
FAEGRE BAKER DANIELS LLP - Indianapolis
ellen.boshkoff@faegrebd.com

Robert Thomas Dassow
HOVDE DASSOW & DEETS LLC
rdassow@hovdelaw.com